IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CROSSROADS TREATMENT CENTER
OF SOUTHERN MISSISSIPPI, P.C.                                    PLAINTIFF

VS.                                              CAUSE NO. 1:18-cv-245-LG-RHW

PEARL RIVER COUNTY, MISSISSIPPI                                  DEFENDANT

## COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiff Crossroads Treatment Center of Southern Mississippi, P.C. ("Crossroads") files this Complaint against Pearl River County, Mississippi ("Pearl River County" or "Defendant") for declaratory and injunctive relief and monetary damages, and in support, states the following.

### PARTIES

1.  Plaintiff Crossroads is a Mississippi corporation.

2.  Defendant Pearl River County is a governmental entity organized under the laws of the State of Mississippi and is a "public entity" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA, 42 U.S.C. § 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

### JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331; 42 U.S.C. §§ 12132 and 12133; and 28 U.S.C. §§ 2201 and 2202.

4.  Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims alleged herein occurred in this district and because Pearl River County is located in this district.

03030195

## FACTS

### A. Crossroads Treatment Centers

5. Crossroads is a standalone professional corporation owned by Rupert J. McCormac, IV, MD.

6. Dr. McCormac also owns a number of other Crossroads entities in the United States ("Crossroads Facilities").

7. There are currently 42 Crossroads Facilities operating in 9 states across the country.

8. Crossroads and Crossroads Facilities specialize in outpatient Medication-Assisted Treatment ("MAT") using FDA-approved addiction medications such as methadone, Suboxone, and Subutex to treat opiate addiction.

9. Crossroads Facilities have been providing MAT for over 10 years to people suffering from dependence on heroin, pain addiction medications, or other opiates.

10. MAT helps addicts stop using narcotics by blocking withdrawal symptoms and the physical craving for other opioids.

11. MAT utilizing methadone has been in use as the primary form of treatment for opiate addiction and dependence for over 40 years.

12. MAT has been recognized by the Center for Disease Control as the most effective form of treatment for adults suffering from opioid dependence.

13. The National Institute of Health similarly named MAT the "gold standard" for opiate treatment.

14. In addition to providing MAT, Crossroads Facilities also offer individualized treatment planning, supportive individual and group counseling, education in recovery skills and

life management, coordination with community resource and service professional for other necessary treatment services, and drug screenings and employ counselors, clinical supervisors, nurses, physicians, and other service coordinators to provide its patients a full and appropriate spectrum of care. Crossroads would offer these same services.

15. Patients at Crossroads Facilities receive treatments and services between the hours of 5:00 a.m. and 10:00 a.m. and must receive MAT on-site absent an exception.

16. Prospective Crossroads patients would receive treatments and services during these same hours and would also be required to receive MAT on-site absent an exception following a thorough review process.

17. Individuals suffering from heroin and opioid drug addiction, including current patients at Crossroads Facilities and prospective Crossroads patients, suffer in numerous ways that make them "disabled" under the ADA, including the loss of employment, spouses, and children. Such addictions can also negatively impact the ability to hold a job, engage in parenting, and function socially.

18. The stigmas associated with drug addiction, including the types of addictions suffered by patients at Crossroads Facilities and prospective Crossroads patients, also frequently lead society to regard these patients as disabled and significantly impaired in the performance of major life activities whether or not their disabilities actually create such impairments.

19. Before a prospective patient is admitted for treatment at a Crossroads Facility, including Crossroads, the prospective patient receives a face-to-face assessment by the medical director or program physician to determine appropriateness for MAT.

20. Admission criteria at Crossroads Facilities, including Crossroads, include (a) evidence of current physiological dependence and opioid addiction (with tolerance and

withdrawal) in accordance with the DSM-V, as diagnosed by qualified medical staff; (b) behaviors indicative of opioid addiction, including adverse consequences and continued abuse of opiates, and multiple, daily self-administration; (c) observable physical signs and symptoms of opioid dependence; and (d) meeting criteria for opiate dependence throughout the preceding 12 consecutive months.

21. Crossroads Facilities only locate in areas where there is an evidenced need for MAT.

22. Crossroads has determined that there is a need for MAT in Pearl River County.

23. The majority of patients that go to Crossroads Facilities come from the local community.

24. If Crossroads opens, it anticipates the majority of its patients coming from the local community.

**B. Opioid Addiction in Mississippi**

25. Opioid addiction is a chronic disease, like heart disease or diabetes.

26. As reported by The Clarion-Ledger, Mississippi's opioid overdose death numbers showed a 79% increase from 2016 to 2017.

27. At the end of 2016, there were 99 confirmed opioid overdose deaths reported to the Mississippi Bureau of Narcotics.

28. In 2017, there were 178 confirmed opioid-related overdose deaths reported.

29. Subsequent reports have shown that the number of overdose deaths in 2016, in fact, exceeded 200.

30. The reported number of 2017 deaths is likewise expected to be revised upward.

31. From 2011 to 2015, Mississippi's opiate overdose deaths doubled.

32. In Pearl River County, emergency department visits in relation to the harmful effects of opiate overdoses tripled from 2014 to 2017.

33. Writing in July 2017, Pearl River County Justice Court Judge David Fail stated that he had "seen a significant increase in the number of arrests and court cases related to drugs. In recent months, this area has had several deaths of young adults related to heroin overdoses. This is a growing problem and I support anything that can be done to help reverse the effects of drugs in our county."

34. Pearl River County is in the top 5 of Mississippi counties for opioid overdose deaths.

35. Pearl River County and nearby Hancock County are known as "Ground Zero" for heroin in the state.

36. Hancock County is the number one county for heroin overdoses in Mississippi.

37. Mississippi is the leading prescriber of opioid painkillers with the equivalent of 70 opioid pills for every man, woman, and child in 2016.

38. Mississippi currently has five outpatient opioid treatment centers located in Walls, Jackson, Meridian, and Biloxi, and soon will have one in Tupelo.

39. The Biloxi Treatment Center, the closest MAT center to Pearl River County, is located 57.6 miles from where Crossroads intends to locate.

**C. Crossroads Attempts to Open a Treatment Facility in Pearl River County**

40. An entity seeking to open an opioid treatment center in the State of Mississippi is required to first obtain a certificate from the Mississippi Department of Mental Health ("MDH").

41. On July 27, 2017, Crossroads submitted its certificate application to MDH to open a treatment clinic in Pearl River County.

42. After a lengthy review process, on January 4, 2018, MDH granted Crossroads its certificate.

43. On February 21, 2018, Crossroads' management company entered into a lease agreement for the property where the facility is to be located. The property is located at 10 Carrie Mitchell Road, Carriere, Mississippi 39426 ("Property").

44. On March 26, 2018, Robert Thigpen, a member of the LCC that owns the Property, informed Pearl River County of the lease agreement by written correspondence.

45. On April 4, 2018, Pearl River County issued a $2,715 building permit for the Property.

46. On April 10, 2018, Pearl River County issued a $222.00 electrical permit for the Property.

47. The building and electrical permit applications identified Crossroads as the Property's tenant.

48. Despite these approvals for Crossroads to open a clinic on the Property, Pearl River County, in response to opposition from some members of the community, has attempted to prevent Crossroads from opening.

49. According to an April 17, 2018 report in the Picayune Item, a local newspaper, County Board of Supervisors President Sandy Kane Smith said he opposes Crossroads "because he does not see how providing drugs to a person addicted to controlled substances will fix the problem." Supervisor Smith reportedly stated: "I'm on the side of the citizens and don't want it because of all that it brings along with it."

50. County Sheriff David Allison similarly opined that the facility will only lead to more crime and increase the existing drug problem. Sheriff Allison does not agree with the "idea of helping people with drug addictions in the county by trying to switch them to other drugs."

51. On April 17, 2018, the Board's administrative assistant contacted Robert Thigpen requesting a closed-door meeting with the Board, County Attorney Joe Montgomery, and Crossroads on April 18 at 11:00 a.m.

52. However, when Mr. Thigpen arrived, he was told by a bailiff that the "public meeting" was across the street.

53. Mr. Thigpen informed the bailiff that he was not told about a public meeting.

54. While waiting for the Board to arrive, Sheriff Allison told Mr. Thigpen that he was tasked with preparing a video about Crossroads.

55. When asked if Mr. Thigpen had been secretly filming Crossroads or Crossroads Facilities, Sheriff Allison said "No," but that he had prepared a video of clinics "like Crossroads."

56. Mr. Thigpen was told that the County intended on presenting this video at the "public meeting" that Crossroads received no notice of prior to arrival for what was thought to be a closed-door meeting with the Board and Mr. Montgomery.

57. The Board never showed up for this closed-door meeting.

58. On April 18, 2018, the County Board of Supervisors addressed public concerns over the Crossroads facility at the "public meeting," despite this matter not being on the meeting agenda. After going into executive session to discuss the issue, the Board returned at which time Mr. Montgomery instructed the public that the County would enforce a 1999 Ordinance ("Ordinance") to prevent Crossroads from opening.

59. The official minutes of the April 18, 2018 meeting do not mention Crossroads or the Ordinance.

60. Following the April 18 meeting, Board Vice President Hudson Holliday stated: "We represent the public in the county…. I hope [the owner] sees the public opposition and will have second thought about it. Bringing drug addicts to the community is not the way to clean this place up."

61. Supervisor Smith reportedly said the Board used the Ordinance to stop the center from being established, in part due to the public outcry. Smith said: "I'm real proud of the community, they did their homework and opened my eyes on the issue."

62. Mr. Thigpen told the Picayune Item that the Board never spoke to him about the matter during the executive session or allowed him to speak about the benefits he felt the center could bring.

63. On April 19, 2018, Mr. Montgomery wrote Crossroads advising it that the County intended on enforcing the Ordinance prohibiting certain facilities in the unincorporated areas of the County and instructing Crossroads to cease and desist from further work on the Property.

64. The Ordinance makes it unlawful "to purchase, operate, maintain, and/or conduct in all the unincorporated areas of Pearl River County, Mississippi, any half-way home(s), prisons, rehabilitation, or other remedial businesses for the aid, help, training, rehabilitation, schooling, instruction, use, benefit, or advantage of current prisoners, ex-convicted prisoners, current or ex-drug addicts, current or ex-alcohol addicts, inmates, or patients, or any other rehabilitation or similar remedial business."

65. A county board of supervisors is only empowered to enact such regulations in the unincorporated areas of the county. *See* Miss. Code Ann. § 17-1-3.

66. Although Pearl River County is enforcing the Ordinance against Crossroads, the County has decided not to enforce the Ordinance against other clinics attempting to treat current and former addicts without using MAT, including several faith-based clinics.

67. At the time of receipt of the cease and desist letter, Crossroads was 80% complete in its renovations which were scheduled to be completed by May 4.

68. On June 15, 2018, Crossroads' counsel submitted a public records request to the County. The public records request asked for, among other things, all documents, information, and communications relating to the inefficacy of MAT or harms or crime associated with MAT. Pearl River County produced no documents or information relating to the inefficacy of MAT or harms or crime associated with MAT other than an April 11, 2018 resolution from Sycamore Baptist Church expressing generalized negative stereotypes that was shared with the Board prior to the April 18 "public meeting."

69. On information and belief, the derogatory statements made by Pearl River County officials regarding the undesirability of individuals suffering from addiction and centers whose purpose is to assist such individuals were not based on any empirical, factual, or reliable information, but instead were based on stereotype, bias, prejudice, and/or unsubstantiated fear.

70. On information and belief, neither Pearl River County's adoption nor its enforcement of the Ordinance was based on any empirical, factual, or reliable information, but instead was based on stereotype, bias, prejudice, and/or unsubstantiated fear.

71. On information and belief, Pearl River County both adopted and enforced the Ordinance based on a desire to discriminate against "qualified individuals with disabilities" within the meaning of 42 U.S.C. §§ 12102 and 12131(2) and 28 C.F.R. § 35.104.

## COUNT I: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

72. Crossroads incorporates by reference the allegations contained in the preceding paragraphs.

73. Pearl River County's actions described above, including its adoption and enforcement of the Ordinance, both facially and as-applied:

   a. Constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35;

   b. Exclude individuals with disabilities from participation in and deny them the benefits of the services, programs, or activities of a public entity on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(a);

   c. Afford qualified individuals with disabilities an opportunity to participate in or benefit from the services of a public entity that are not equal to those afforded others, in violations of Title II of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(1)(ii);

   d. Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(1)(vii);

   e. Fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(7);

f. Utilize methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(3); and

g. Exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(g).

74. Pearl River County acted intentionally, willfully, and in disregard for the rights of others in adopting and enforcing the Ordinance.

75. As a result of Pearl River County's conduct and its adoption and enforcement of the Ordinance, qualified individuals with disabilities and those who associate with qualified individuals with disabilities, including Crossroads, have suffered damages and injuries.

76. As a result of Pearl River County's conduct and its adoption and enforcement of the Ordinance, Crossroads has suffered damages and injuries.

## COUNT II: SUBSTANTIVE DUE PROCESS

77. Crossroads incorporates by reference the allegations contained in the preceding paragraphs.

78. Pearl River County's adoption and enforcement of the Ordinance, both facially and as applied, were and are clearly arbitrary, capricious, unreasonable, illegal, and discriminatory, and have no substantial relation to the public health, safety, morals, or general welfare. The adoption and enforcement of the Ordinance are not rationally related to any

legitimate government interest, and there is no conceivable legitimate rational basis for the Ordinance's adoption and enforcement. Pearl River County adopted and enforced the Ordinance for the specific purpose of discriminating against qualified individuals with disabilities and those who associate with qualified individuals with disabilities. Pearl River County's adoption and enforcement of the Ordinance, both facially and as applied, violate Crossroads' substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

79. The deprivation of Crossroads' rights was inflicted under color of state law and pursuant to official Pearl River County policy.

80. As a direct and proximate result of Pearl River County's adoption and enforcement of the Ordinance, Crossroads has suffered and will continue to suffer economic damages, and is entitled to recovery in an amount to be determined by a jury and the Court.

81. Moreover, Crossroads is entitled to punitive damages on its substantive due process claim as Pearl River County's conduct involves reckless or callous indifference to Crossroads' federally protected rights, and/or it is motivated by evil motive or intent. *See Smith v. Wade*, 461 U.S. 30, 47-49 (1983).

82. Crossroads is also entitled to a declaration from the Court recognizing the foregoing violation of its right to substantive due process under the United States Constitution based on the adoption and enforcement of the Ordinance. Crossroads is further entitled to injunctive relief prohibiting Pearl River County from violating its substantive due process rights or otherwise enforcing the Ordinance against it.

## COUNT III: PROCEDURAL DUE PROCESS

83. Crossroads incorporates by reference the allegations contained in the preceding paragraphs.

84. Pearl River County applied the Ordinance to Crossroads, effectively revoking its previously issued permits, without providing Crossroads notice, an opportunity to be heard, or a meaningful opportunity to contest the Ordinance's application to Crossroads.

85. The enforcement of the Ordinance and the de facto revocation of Crossroads' permits without adequate notice violated Crossroads' procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215 (5th Cir. 2012).

86. The deprivation of Crossroads' rights secured to it by the Fifth and Fourteenth Amendments to the United States Constitution was inflicted under color of state law and pursuant to official Pearl River County policy.

87. As a direct and proximate cause of Pearl River County's violations of Crossroads' procedural due process rights, Crossroads has suffered and will continue to suffer significant economic damages, and is entitled to recovery in an amount to be determined by a jury and the Court.

88. Moreover, Crossroads is entitled to punitive damages on its procedural due process claim as Pearl River County's conduct involves reckless or callous indifference to Crossroads' federally protected rights, and/or it is motivated by evil motive or intent. *See Smith v. Wade*, 461 U.S. 30, 47-49 (1983).

89. Crossroads is also entitled to a declaration from the Court recognizing the foregoing violation of its right to procedural due process under the United States Constitution

based on the enforcement of the Ordinance. Crossroads is further entitled to injunctive relief prohibiting Pearl River County from enforcing the Ordinance against it.

## COUNT IV: EQUAL PROTECTION

90. Crossroads incorporates by reference the allegations contained in the preceding paragraphs.

91. Pearl River County's adoption and enforcement of the Ordinance was and is unreasonable, discriminatory, arbitrary, and capricious and not reasonably related to any legitimate state interest or to the public health, safety, morals, or general welfare.

92. Pearl River County's adoption and enforcement of the Ordinance was and is based on generalized negative stereotypes, attitudes, prejudices, and fears unsubstantiated by any legitimate, rational basis.

93. Pearl River County's adoption and enforcement of the Ordinance was and is based on unconstitutional classifications that treat MAT treatment facilities dissimilarly from other facilities serving individuals suffering from addiction. Pearl River County has not applied the Ordinance to several non-MAT facilities serving individuals with addictions, including several faith-based treatment clinics located in the unincorporated areas of Pearl River County.

94. Pearl River County's adoption and enforcement of the Ordinance was and is based on unconstitutional classifications that treat individuals suffering from addiction, and entities serving such individuals, dissimilarly from individuals suffering from other disabilities, such as diabetes or heart disease, and entities serving such individuals.

95. Pearl River County's adoption and enforcement of the Ordinance was and is motivated by purposeful discrimination against individuals suffering from drug addiction and those who associate with such individuals.

96. Pearl River County's adoption and enforcement of the Ordinance, both facially and as applied, deny Crossroads equal protection under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

97. The deprivation of Crossroads' equal protection rights secured to it by the Fourteenth Amendment to the United States Constitution was inflicted under color of state law and pursuant to official Pearl River County policy.

98. As a direct and proximate cause of the City's adoption and enforcement of the Ordinance, Crossroads has suffered and will continue to suffer economic damages, and is entitled to recovery in an amount to be determined by a jury and the Court.

99. Moreover, Crossroads is entitled to punitive damages on its equal protection claim as Pearl River County's conduct involves reckless or callous indifference to Crossroads' federally protected rights, and/or it is motivated by evil motive or intent. *See Smith v. Wade*, 461 U.S. 30, 47-49 (1983).

100. Crossroads is also entitled to a declaration from the Court recognizing the foregoing violation of its right to equal protection under the United States Constitution based on the adoption and enforcement of the Ordinance. Crossroads is further entitled to injunctive relief prohibiting Pearl River County from enforcing the Ordinance against it.

**WHEREFORE, PREMISES CONSIDERED**, Crossroads requests that the Court enter an order:

    a) Declaring that Pearl River County's actions, including its adoption and enforcement of the Ordinance, violate the Americans with Disabilities Act and its implementing regulations and Crossroads' constitutional rights to substantive due process, procedural due process, and equal protection;

b) Enjoining Pearl River County, its officers, employees, agents, successors, and all other persons in active concert or participation with it, from enforcing the Ordinance against Crossroads or in any manner discriminating against persons with disabilities or Crossroads;

c) Requiring Pearl River County to immediately repeal the Ordinance;

d) Requiring Pearl River County to take all affirmative steps to ensure its compliance with the Americans with Disabilities Act, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of its unlawful practices as described herein;

e) Requiring Pearl River County to take all affirmative steps to restore, as nearly as practicable, the victims of Pearl River County's unlawful practices to the position they would have been in but for Pearl River County's discriminatory conduct;

f) Awarding monetary damages pursuant to the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35;

g) Awarding monetary damages pursuant to 42 U.S.C. § 1983 for Pearl River County's violations of Crossroads' constitutional rights;

h) Awarding reasonable costs and attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1988, and 12205;

i) Awarding punitive damages; and

j) Awarding such further relief as the Court deems appropriate.

This the 24th day of July, 2018.

Respectfully submitted,

**CROSSROADS TREATMENT CENTER OF SOUTHERN MISSISSIPPI, P.C.**

By: _____
*One of its Attorneys*

OF COUNSEL:

Benje Bailey (MSB No. 100053)
Sheldon G. Alston (MSB No. 9784)
William D. Drinkwater (MSB No. 103913)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 948-3101
Telecopier: (601) 960-6902
bbailey@brunini.com
salston@brunini.com
wdrinkwater@brunini.com